# EXHIBIT A

# REPORT OF INVESTIGATION

## IN THE COMPLAINT OF

MICHAEL T. BENSON

VS

FOOD AND DRUG ADMINISTRATION

## CASE NUMBER ___FDA-D-012-98___

## CONDUCTED BY:



KENSINGTON ASSOCIATES

# OFFICIAL USE ONLY

FILE NUMBER FDA-D-012-98

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION
REPORT OF INVESTIGATION

EQUAL EMPLOYMENT OPPORTUNITY

COMPLAINT OF:

Michael T. Benson
2703 Waco Court
Baltimore, MD 21209

vs.

Food and Drug Administration
Rockville, MD 20857

Prepared by:

Kensington Associates
9834 Capitol View Avenue
Silver Spring, MD 20910
Telephone: 301-588-8172

FDA-D-012-98

REPORT OF INVESTIGATION

1.   COMPLAINT IDENTIFICATION

Complainant's Name:  Michael T. Benson

Job Title and Grade:  Regulatory Review Pharmacist,
                      GS-660-14

Name of Organizational Unit/Address:

    Division of Over-the-Counter Drug Products
    Office of Drug Evaluation
    Food and Drug Administration

Complaint Reference Date:  Nov 12, 1997

Kind of Discrimination Alleged:

    Complainant alleges he was discriminated against on the basis of physical handicap (Post Polio Syndrome) in that he was denied needed accommodation for his handicap.

Name of action giving rise to complaint:

    On May 20, 1996 complainant requested accommodation for his physical handicap.  This request was denied.

Names of Officials involved in complaint:

    Linda M. Katz, MD GS-15, Supervisor

    Debra Bowen, MD GS-15, Second Level Supervisor

II.   DESCRIPTION OF INVESTIGATION

Investigator and Contractor:
    Thomas A. Statum
    Kensington Associates
    9834 Capitol View Avenue
    Silver Spring, MD 20910

Place of Investigation:
    Rockville, MD  20857

FDA-D-012-98

2

<u>Dates of Investigation:</u>
June 15, 1998 - July 10, 1998

III.  <u>BACKGROUND</u>

The complainant alleges that he was discriminated against on the basis of physical handicap (Post-Polio Syndrome) when:

On June 17, 1996 he received an official reprimand from his supervisor.

On May 7, 1996 he was charged with one and three quarters hours of absent without leave (AWOL) by his supervisor.

On April 15, 1996 he was notified by his supervisor that he would no longer be authorized to work a flexiplace schedule beginning April 17, 1996.

He was denied working a flexiplace schedule as a reasonable accommodation for his physical handicap.

On April 15, 1996 the complainant met with his supervisor regarding his being allowed to continue working a "flexiplace schedule". The complainant was informed that he would no longer be working a flexiplace schedule beginning April 17, 1996, but that complainant could work at home April 16, 1996. The complainant alleges that he has a handicap (post-polio syndrome) which should be accommodated by allowing him to work from his home for two days per week.

A disability (Handicap) is defined as a "physical or mental impairment which substantially limits one or more major life activities." Document of complainant's condition was provided by him and is included in exhibit 9.

On May 20, 1996 the complainant requested that his work at home privileges be restored because of his medical condition. The complainant submitted medical documentation on his condition (Post -Polio Syndrome) to Dr. J. Vorosmarti, Jr., a Medical Consultant to FDA. He sought accommodation to work at home two days per week. Following an exchange of letters between the complainant Dr. Vorosmarti, et al, Dr. Vorosmarti stated he could find no medical reason to support the requested accommodation. (Exhibit 1)

FDA-D-012-98

On November 5, 1997 the Agency gave complainant notice of final interview and right to file a discrimination complaint. (Exhibit 2)

On November 12, 1997 the complainant filed a Formal Discrimination Complaint. (Exhibit 3)

On December 15, 1997 the Agency acknowledged receipt of his discrimination complaint.  (Exhibit 4)

On April 24, 1998 the Agency accepted the complaint for processing. (Exhibit 5)

Threshold Burden

Disability (Handicap) is defined above.  The complainant requested, as a right of accommodation, to work from his home two days per week as an accommodation to his handicap.  Complainant submitted medical documentation to buttress his request. (Exhibit 9)

Complainant's management agrees with complainant that he has Post-Polio Syndrome.  The FDA medical consultant, Dr. J. Vorosmarti, Jr., did not find the medical documentation sufficient to establish grounds for accommodation.  No other medical documentation was submitted.  (Exhibit 15)

IV.    SUMMARY

Complainant was allowed to work from his home two days per week until April 1996 when his participation in FDA's flexiplace workplace schedule was terminated due to management's perceived concerns about his work performance.  Under the Flexible Workplace Agreement terms management has the right to remove an employee from the flexiplace project for reasons such as the employees performance.  Following complainant's being removed from the flexiplace project he requested that he be reinstated in the project.  When this request was denied he requested that he be allowed to work at home two days per week as an accommodation to his condition of Post-Polio Syndrome.

The complainant states that Food and Drug Administration (FDA) employees have denied him the right under the Rehabilitation Act of 1973 (29 USC 791) to a reasonable

FDA-D-012-98

4



accommodation of working 2 days a week from his home.
Complainant further states that he has been diagnosed with Post
Polio Syndrome of the respiratory muscles and that this condition
together with his severe scoliosis secondary to poliomyelitis of
the abdominal muscles significantly compromises his pulmonary
function.  (Exhibit 6)

Prior to April 17, 1996 complainant was participating in
the Department of Health and Human Services Flexible Workplace
Project ("Flexiplace Schedule") which allowed him to work from
his home 2 days (Tuesday and Thursday) per week.  (Exhibit 7)

On April 16, 1996 complainant was notified by his
supervisor, Ms. Anne Mustafa, that he was no longer approved for
working a flexiplace schedule.  His supervisor stated that she
was not satisfied with his work and needed to supervise him more
closely. (Exhibit 8)

Agencies have a responsibility to reasonably accommodate
the known physical or mental limitations of a qualified disabled
employee, where such accommodation does not present an undue
hardship.  Management does not claim agency hardship.

On May 6, 1996 complainant sent an e-mail to his supervisor
requesting that she authorize him flexiplace work on May 7, 1996
because of his perception that he was not supervised any more
closely that he had before his flexiplace was terminated.
Complainant awaited supervisor response to this e-mail at his
home.  Complainant's supervisor called sometime after 9:00am on
May 7, 1996 to tell complainant to report to work.  Supervisor
later charged complainant with 1 3/4 hours AWOL.  Complainant
objected to being charged with 1 3/4 hours of AWOL. (Exhibit 6)

On May 20, 1996 complainant requested the immediate
restoration of his flexiplace schedule as a right of
accommodation for his medical condition.  This request was
accompanied by letters from physicians and a respiratory
specialist. (Exhibit 9)

Complainant's supervisor stated in an Official Reprimand
to him dated June 17, 1996 that on the morning of May 7, 1996 she
had received an e-mail from the complainant requesting to work
flexiplace on May 7, 1996. Complainant's e-mail, she stated,
explained that complainant thought it wasteful to travel from
Baltimore considering the high gasoline prices when the same work

FDA-D-012-98



could be done from complainant's home.  On the morning of May 7, 1996 after reading complainant's May 6 e-mail supervisor called complainant, told him to report to work and upon his arrival told him he was AWOL for 1 3/4 hours for working from home without permission and complainant was charged 1 3/4 hours AWOL. (Exhibit 10)

In a stage 1 Grievance dated June 4, 1996, complainant appealed the AWOL finding and the official reprimand. (Exhibit 11)

By memorandum of June 17, 1996 complainant's supervisor informed him the AWOL charges and the official reprimand stood. (Exhibit 12)

On July 1, 1996 complainant filed a Stage 2 Grievance seeking withdrawal of June 17, 1996 Official Reprimand. Exhibit 13)

In a memorandum dated July 18, 1996, complainant's 2nd level supervisor stated she did find sufficient evidence or argument to support withdrawal of the Official Reprimand. (Exhibit 14)

Mr. Bensons' accommodation request and medical documentation were forwarded to James Vorosmarti, Jr. M.D. who serves as a contract consultant in Occupational Medicine to the Office of Human Resources Management, Food and Drug Administration.  After reviewing complainants request and medical documentation, Dr. Vorosmarti stated "...remaining at home two days per week will have no beneficial effect on his disease, nor that working in the office will cause any detriment in function that would not occur as a natural consequence of his disease...". Dr. Vorosmarti also stated that he had no objection to complainant working at home two days per week but that he could find no medical reason for him to do so.  (Exhibit 15)

Dr. Vorosmarti on 7/6/98 affirmed his opinion regarding complainants condition but also stated neither he nor anyone at his request conducted a medical examination of the complainant. (Exhibit 16)

The complainant's second level supervisor, Debra Bowen, M.D. stated that the complainant's flexiplace schedule was terminated by his immediate supervisor Ms. Anne Mustafa based on

FDA-D-012-98

6



her concerns about his work performance.  As the FDA consulting physician had stated that complainant would not be helped by working at home 2 days per week or hurt by working in the assigned office full time, the complainant's request for accommodation was denied.  (Exhibit 17)

Complainant's immediate supervisor, Linda M. Katz, M.D., affirms that many of the employees she supervises work a Flexiplace Schedule and that she reinstated complainant into the Flexiplace Program on February 24, 1998.  (Exhibit 18)

On February 27, 1998 following what Dr. Katz describes as a violation of the terms of the agreement, complainant's Flexiplace Scheduling was disallowed until further notice. (Exhibit 19)

FDA-D-012-98

# TABLE OF CONTENTS

TABLE OF CONTENTS

EXHIBIT  1.   EEO Counseling Report

EXHIBIT  2.   Notice of Final Interview and Right to File
              Discrimination Complaint

EXHIBIT  3.   Complaint of Discrimination

EXHIBIT  4.   Agency acknowledgment of receipt of Discrimination
              Complainant

EXHIBIT  5.   Agency Acceptance of Complaint for Processing

EXHIBIT  6.   Affidavit of Michael T. Benson, complainant

EXHIBIT  7.   Department of Health and Human Services Flexible
              Workplace Project Work Agreement

EXHIBIT  8.   Electronic Mail Message dated April 16, 1996

EXHIBIT  9.   Request for Accommodation dated May 20, 1996
              with/Medical documents

EXHIBIT 10.   Memorandum to Michael Benson dated Jun 17, 1996
              Subject:  Official Reprimand - corrected

EXHIBIT 11.   Memorandum to Debra L. Bowen, M.D. dated Jun 4,
              1996 Subject:  Stage 1 Grievance

EXHIBIT 12.   Memorandum to Michael Benson dated Jun 17, 1996
              Subject:  Stage 1 Grievance Decision

EXHIBIT 13.   Memorandum to Debra L. Bowen, M.D. dated Jul 1,
              1996 Subject:  Stage 2 Grievance

EXHIBIT 14.   Memorandum to Michael Benson dated Jul 18, 1996
              Subject:  Stage 2 Grievance Decision

EXHIBIT 15.   Various Memorandums of Doctor J. Vorosmarti, et al

FDA-D-012-98

EXHIBIT 16.   Affidavit of J. Vorosmarti, Jr. M.D.

EXHIBIT 17.   Affidavit of Debra Bowen, M.D.

EXHIBIT 18.   Affidavit of Linda M. Katz, M.D.

EXHIBIT 19.   Electronic message dated Feb 27, 1998

FDA-D-012-98

1

# FOOD AND DRUG ADMINISTRATION
## EQUAL EMPLOYMENT OPPORTUNITY COUNSELING REPORT

**A.**  <u>Center/District Office</u>    <u>Counselor's Name</u>    <u>PHONE#:</u>

CBER                Charles F. Arp    827-1343

**B.**  <u>AGGRIEVED PERSON</u>

Name: <u>Michael Benson</u>

Job Title/Series/Grade: <u>Pharmacist, GS-660-14</u>

Social Security Number: _____

Place of Employment: <u>Div., OTC Drug Products, ODE V, CDER</u>

Work Phone No.: <u>301-827-2311</u> Home Phone No.: <u>410-484-7262</u>

Home Address:  2703 Waco Court
              Baltimore, MD 21209

Representative:
Mailing Address:
Phone Number:

**C.**  <u>CHRONOLOGY OF COUNSELING ACTIVITIES</u>

Date of initial contact: <u>September 2, 1997</u>

Date of initial interview: <u>September 5, 1997</u>

Date of alleged discriminatory Act: <u>June 17, 1996</u>

Reason for delayed contact beyond 45 days, if applicable:

Complainant continued to submit medical documentation to the
Agency medical consultant to support his request of
accommodation to work at home because of his medical
condition (post-polio syndrome). Complainant received a
final response from Agency medical consultant, dated July
23, 1997.

Date Complainant advised of opportunity to participate in
Alternative Dispute Resolution (ADR) Process: ___N/A_____

Date Complainant agreed____ declined_____ to Participate in
ADR process:_____

Date Initial Counseling Report Completed: <u>September 15, 1997</u>

(KA) EXHIBIT___1
Page_1_ of _11_ pages

Page 2 - FDA EEO Counselor's Report

Date Initial Counseling Report submitted to EEO Office:

September 26, 1997

Date of Notice of Final Interview and Right to File a
Discrimination Complaint: _____

Has the complainant filed a grievance under the Agency
Administrative Grievance Process or an EEO grievance under a
negotiated grievance process on the same or related issues?
NO Yes ____

D.1. BASIS FOR ALLEGED DISCRIMINATION

Race/Color

( )1. Aleut (Alaska Only)        ( )5. Hispanic
( )2. Asian                       ( )6. Native American
( )3. Black                       ( )7. White
( )4. Eskimo (Alaska Only)        ( )8. Other(specify)

National Origin: (specify)

Religion               Handicap

( )A. Jewish           (X)P. Physical
( )B. Catholic         ( )M. Mental
( )C. Protestant       ( )B. Both
( )D. Other

Age( ) _____     Date of Birth:

Sex:

( ) F. Female        ( ) M. Male

Retaliation/Reprisal (date of last participation in
protected activity or opposed practice: _____

D.2. ISSUES ALLEGED

( ) 1. Appointment/Hire          ( )13. Harassment (nonsexual)
( ) 2. Assign/Duties             ( )14. Harassment (sexual)
( ) 3. Awards                    ( )15. Promotion
( ) 4. Conversion Full Time      ( )16. Non selection
( ) 5. Constructive Discharge    ( )17. Reassignment Request
( ) 6. Demotion                            Denied
( ) 7. Suspension                ( )18. Directed Reassignment
( ) 8. Termination               ( )19. Reinstatement
( ) 9. Disciplinary Action       ( )20. Time & Attendance
( )10. Duty Hours                ( )21. Training



(KA) EXHIBIT 1
Page 2 of 11 pages

Page 3 - FDA EEO Counselor's Report

( )11. Examination/Test          ( )22. Pay Including O/T
( )12. Evaluation/Appraisal      ( )23. Retirement (explain)
( )24. Terms/Conditions of Employment
(X)25. Reasonable accommodation (handicap/disability)
( )26. Reasonable accommodation (religion)
( )27. Involuntary Separation
( )28. Reprimand
( )29. Other (explain)

E.   **ALLEGATION(s) OF DISCRIMINATORY ACT(s), DATES & IDENTITY**
     **OF RESPONSIBLE MANAGEMENT OFFICIAL(s)**

Allegation No. 1 and dates of occurrence

Mr. Michael Benson met with Ms. Anne Mustafa, Supervisory
Chemist, Division of OTC Drug Products, Office of Drug
Evaluation V, CDER, on April 15, 1996 regarding working on a
flexiplace schedule.  Ms. Mustafa informed the complainant
that he would no longer be working on a flexiplace schedule
beginning April 17, 1996, but could work at home April 16,
1996, which was outlined in an official reprimand, dated
June 17, 1996 (Ex 1).  Mr. Benson indicated that a part of
that reprimand indicated that Ms. Mustafa was not satisfied
with his work performance as one of the reasons he was being
denied to continue to work at home.

Mr. Benson requested that Ms. Mustafa restore his work at
home privileges because of his medical condition (Ex 2,
dated May 20, 1996).

Mr. Benson submitted medical (post-polio syndrome)
documentation, dated May 21, 1996 (Ex 3) to Dr. Vorosmarti,
DHHS, Medical Consultant, seeking accommodation that he be
allowed to work at home for two days a week due to his
medical condition.  Dr. Vorosmarti responded to Mr. Benson
that his medical documentation did not support his request
(Ex 4).  Therefore, Ms. Mustafa did not restore Mr. Benson's
flexiplace privileges.

There were other documents that transferred between Dr.
Vorosmarti, OHRMS and Mr. Benson between May 24, 1996 and
July 18, 1997 (Exhibits 5-13), with Dr. Vorosmarti still
maintaining his position that Mr. Benson's medical
documentation did not support his request.

Dr. Vorosmarti responded in a letter dated July 23, 1997,
stated that he had no objection to Mr. Benson working at
home, but could find no medical reason for him to continue
do so (Ex 14).



Page 4 - FDA EEO Counselor's Report

**F.**   **REQUESTED RELIEF**

-   Wants to continue to work at home 2 days a week;
-   Wants the 1 3/4 hours of AWOL restored;
-   Wants the official reprimand of June 17, 1996 removed from his official personnel folder; *and declared null and void.*

**G.**   **MANAGEMENT'S RESPONSE TO EACH ALLEGATION (NAME, TITLE, & TELEPHONE NUMBER OF EACH RESPONSIBLE MANAGEMENT OFFICIAL**

Allegation No. 1

Met with Dr. Linda Katz, October 8, 1997, she stated that Mr. Benson had requested in August 1997 that he be allowed to continue to work at home.  Dr. Katz responded that she would make a decision by the end of October, because she wanted a chance to review his work more.

During the inquiry, Dr. Katz stated that Ms. Anne Mustafa serves as Mr. Benson's mentor, which includes reviewing his work.  Dr. Katz stated that his document flow (time-frames) has improved, but his quality of work, more specifically, his writing, has not improved.  Therefore, at this time, she will not consider Mr. Benson's request to work at home, until he has improved his quality of work.

I had a telephone interview on October 9, 1997 with Mr. Benson's former supervisor, Ms. Anne Mustafa.  She responded basically to what was documented in the official reprimand (Ex 1).  I asked her if she signed the Flexible Workplace Arrangements Agreement that was for Mr. Benson for April 1, 1996 to April 1, 1997.  She stated she did not.

**H.**   **DOCUMENTS REVIEWED**

Ex 1   Official Reprimand - Corrected, June 17, 1996

Ex 2   Restoration of Flexiplace, dated May 20, 1996

Ex 3   Letter to Dr. James Vorosmarti with attachments, dated May 21, 1996

Ex 4   Letter from Dr. Vorosmarti to Ms. Leah Mader Re:  Mr. Michael Benson, dated May 21, 1996

Ex 5   Memorandum from Dr. Vorosmarti to Mr. Michael Benson, dated May 24, 1996

Ex 6   Letter from Michael Benson to Dr. James Vorosmarti, dated May 29, 1996



(KA) EXHIBIT __1__
Page _4_ of _11_ pages

Page 5 - FDA EEO Counselor's Report

Ex 7   Memo from Dr. J. Vorosmarti to Ms. L. Mader Re:  Mr. M. Benson, dated May 31, 1996

Ex 8   Letter from Dr. Charles A. Hartjen to Division of Employee Relations, HFA-430 Office of Medical Consultant, dated August 20, 1996

Ex 9   Memo from Dr. J. Vorosmarti to Ms. Leah Mader Re: Mr. M. Benson, dated September 5, 1996

Ex 10  Memo from Dr. J. Vorosmarti to Ms. L. Mader Re: Mr. Michael Benson, dated November 4, 1996

Ex 11  Note to Dr. J. Vorosmarti from Michael Benson, dated December 19, 1996

Ex 12  Memo from Dr. J. Vorosmarti to Ms. L. Mader Re: Mr. Michael Benson, dated January 7, 1997

Ex 13  Note from Michael Benson Through Leah Mader to Dr. J. Vorosmarti, dated July 18, 1997

Ex 14  Memo from Dr. J. Vorosmarti to Ms. P. Kelley Re: Mr. M. Benson, dated July 23, 1997

Ex 15  Memo from Michael Benson to Debra Bowen Re: Stage 1 Greivance

I.   <u>SUMMARY OF INFORMAL RESOLUTION ATTEMPTS</u>

During the meeting on October 8, 1997, between Dr. Katz and myself, I asked if she willing to reconsider Mr. Benson's request of working at home.  She informed me that she told Mr. Benson in August 1997, that if his quality of work improved (primarily his writing) by the end of October, she would reconsider.  She asked if I had any ideas on getting him trained in writing.  I informed her of the training courses the Washington Training Center has to offer, contacting CDER's training staff for resources, and researching private industry's writing seminars.

I talked with Dr. Linda Katz again on October 31, 1997 and asked if Mr. Benson's work performance had improved, and if it did, would she reconsider Mr. Benson working at home for two days a week.  She said no, because his writing ability had not improved, and his continued need for closer supervision.

(RA) EXHIBIT     1
Page   5   of   11   pages



Page 6 - FDA EEO Counselor's Report

**J.    INFORMATION AND ADVICE GIVEN TO COMPLAINANT**

Mr. Benson wanted his official reprimand removed, I told him that he should have initiated an EEO complaint within the time limits described in the official reprimand dated June 17, 1996, if he felt as though he was discriminated against. It was discovered on October 28, 1997, that Mr. Benson filed a departmental grievance dated June 4, 1996 (Ex 15) regarding removal of his official reprimand.

I informed Mr. Benson that at the time of his request to work at home (May 7, 1996), he did not have an approved Flexible Workplace Arrangements Program (FWAP) Agreement. His agreement had expired March 6, 1996, and Ms. Mustafa had not signed the one for April 1, 1996 to April 1, 1997. I also informed Mr. Benson that according to his Office's FWAP plan, management has the right to terminate the work at home program for unacceptable performance.

**K.    COUNSELOR'S CERTIFICATION**

The complainant has been informed of all the applicable rights and responsibilities. In addition, (s)he was provided with a written Notice of Final Interview and Right to File a Discrimination Complaint. (See the attached).

_____          _____
Signature of Counselor                          Date

                                                         11/4/97


**L.    COMPLAINANT'S CERTIFICATION**

The Counselor has advised me of my rights and responsibilities in connection with the matter about which I have complained, and has furnished me with the original copy of my counseling report as well as a Notice of Right to File a Formal Complaint and Notice of Final Interview.

_____          _____
Signature of Complainant                        Date

                                                         11-5-97

**DATE:**       September 5, 1997

**TO:**          EEO Counselor

**FROM:**      Michael Benson

**SUBJECT:**   Certification of Receipt of Rights and Responsibilities
                of an Aggrieved Person


I certify that I have been advised of my rights and responsi-
bilities regarding the EEO Administrative process.  I have also
been advised of the alternative avenues of redress available to
process my complaint.

At this time (check below as appropriate):

  ✓              I give permission for my name to be used in the inquiry
                of my complaint.

_____        I request anonymity during counseling.

  ✓              I do not have a representative.

_____        I have a representative who is, is not (circle the
                appropriate response) an attorney and whose name is
                provided below.

                        Name:      _____
                        Address:   _____
                        City/State/Zip:  _____
                        Telephone:  _____


If I later choose to have representation, I will inform the FDA,
Chief, Complaints and Adjudication Branch (301) 443-3310)
immediately and provide the address and phone number of that
person.

I understand that payment of attorney's fees, if I prevail in a
formal complaint, requires prompt notification to the Chief,
Complaints and Adjudication Branch, that I have secured
representation.

I understand that all official correspondence, documents and
decision(s) will be served on my representative with a copy to
me.

 Page 2 - Certification of Receipt of Rights and
            Responsibilities

I also understand that I must inform the FDA OEE&CR of a change
of address immediately and failure to do so may be a basis for
dismissal of my formal complaint.

_Michael T. Benson_                    _9/5/97_
Signature of Aggrieved Person          Date


_Charles F. R._                        _9/5/97_
Signature of EEO Counselor             Date


Attachment: Rights and Responsibilities of Aggrieved Person

(KA) EXHIBIT    1
Page  8   of  11   pages



**DATE:**       October 6, 1997

**TO:**         Chief, Complaints and Adjudication Branch
               Office of Equal Employment & Civil rights

**THROUGH:**    Center EEO Manager

**FROM:**       EEO Counselor

**SUBJECT:**    Agreement to Extend Counseling


By signing this document, You are agreeing to allow me an
extention of <u>30 calendar days</u> to complete the counseling of the
matters presented during the counseling process.

At or before the end of this period, the final interview will be
conducted and the complainant will be advised of his further
rights, unless he has entered into a settlement agreement.

This extension is requested for the following reasons:

I (Charles Arp, EEO Counselor) am requesting this extension
because I was involved in an automobile accident on 9/21/97, and
was on sick leave 9/22-23/97.  In addition, I had an carpal
tunnel syndrome operation on 10/1/97, which I was unable to come
to work 10/2-3/97.

This voluntary agreement means that counseling efforts of the
matter(s) first brought to the attention of the EEO Office on
(<u>September 5, 1997)</u>, will be completed no later than <u>November 4,
1997</u>.

_____          _____
Signature of Complainant                       Date
                                              10/6/97


_____          _____
Signature of Counselor                         Date
                                              10/6/97



**APPROVED BY:**

_____          _____
Signature of EEO Manager                       Date
                                              10/6/97

_____          _____
Chief, Complaints & Adjudication              Date
  Branch

**Note:**      This agreement must be signed by the complainant and
forwarded to the OEE&CR no later than <u>25 calendar days</u>
after the date of the initial interview with the
complainant.  This extension is not approved until it
is signed by the Chief, Complaints and Adjudication
Branch, OEE&CR.

FDA policy is to resolve complaints at the lowest
possible level in the least amount of time.  Extensions
will only be approved when extenuating circumstances
exist or when it is likely that a successful resolution
of the complaint will result if the extension is
granted.

# RECEIPT FORM
## (To be signed at initial meeting)

The EEO Counselor has provided me with the following documents:

(1)  Notification Letter to the Responsible Management Official

(2)  Information on the EEO Process for the Responsible Management Official

(3)  Any or all appropriate policy statements — *none needed*

_____        10 / 8 / 97
Signature                               Date

## NOTE TO EEO COUNSELOR:

At the initial meeting have the Responsible Management Official sign this receipt form and enclose it with your counseling report to the appropriate Center/Office  EEO Manager or the Office of Equal Employment and Civil Rights.

2

DATE:       November 5, 1997

TO:         Michael Benson

FROM:       EEO Counselor

SUBJECT:    Notice of Final Interview and Right to File a
            Discrimination Complaint


This is to inform you that because the matter you brought to my
attention has not been resolved to your satisfaction, you are now
entitled to file a discrimination complaint based on race, color,
religion, sex, national origin, physical or mental handicap, age,
and/or reprisal.  If you file a complaint, it must be in writing,
signed and filed in person or by mail within 15 calendar days
after receipt of this notice.

The complaint must be specific and limited to the matters
discussed with the EEO Counselor.  It is important that in your
letter you state the matter(s) giving rise to your complaint as
concisely as possible, citing the nature of the action, the date,
and the person(s) involved.  <u>It must also state whether or not
you have filed a grievance under the Agency Administrative
Grievance Process or an EEO grievance under a negotiated
grievance procedure or an appeal to the Merit Systems Protection
Board on the same matters.</u>

A discrimination complaint must be filed with the following FDA
official:

        Chief, Complaints and Adjudication Branch
        Office of Equal Employment and Civil Rights
        Food and Drug Administration
        5600 Fishers Lane, Room 8-72, HF-17
        Rockville, Maryland  20857


If you retain an attorney, or any other person as a
representative, you or your representative must immediately
notify us, in writing, at the above address.  You and/or your
representative will receive a written notice of receipt of your
discrimination complaint from the Office of Equal Employment and
Civil Rights.

All official correspondence, documents and decision(s) will be
served on your representative with a copy to you.



Page 2 - Notice of Final Interview and Right to File
        a Discrimination Complaint


If you file a formal complaint with FDA you are reminded of your
responsibility to keep OEE&CR informed of your current mailing
address.

If you have any questions, please call me on 301-827-1400.

_____     ___11-5-97___
EEO Counselor Signature                    Date

_____     ___11-5-97___
Aggrieved Person Signature                 Date


Attachment:   Complainant's Notice of Representation

(KA) EXHIBIT    2
Page   2   of   2   pages

3

Michael T. Benson
2703 Waco Court
Baltimore, MD  21209
November 12, 1997

Chief, Complaints and Adjudication Branch
Office of Equal Employment and Civil Rights
Food and Drug Administration
5600 Fishers Lane, Room 8-72, HF-17
Rockville, MD  20857

To Whom It May Concern:

A self-explanatory complaint prepared by EEO counselor Charles Arp is enclosed.  In this letter, certain facts are explained or supplemented, and certain requests for relief are amplified.

A corrected official reprimand was issued by Anne Mustafa who deemed that I was unauthorizedly absent for 1-3/4 hours from the office on May 7, 1996 and charged me with 1-3/4 hours AWOL.  The reprimand refers to my being denied use of flexiplace ostensibly because she found certain of my work not acceptable, however, it was not issued because of my work performance.

The complaint omits to say that I incurred a severe cardio-pulmonary reaction on the way to work on Tuesday October 8, 1996, a day I normally would have worked from home on flexiplace.  I returned home, used 8 hours sick leave for that day, and seek restoration of those 8 hours of sick leave.

I also seek compensation for (1)  travel time for driving to and from work on the dates I normally would have worked a flexiplace schedule, and (2)  pain and suffering for my having unnecessarily endured exacerbation of symptoms arising from post polio syndrome of the respiratory muscles because of driving to work on days that I once worked at home.

The requested relief says "Wants the 1-3/4 hours of LWOP restored;"  LWOP should have read AWOL.  I seek voiding of the AWOL (not restoration), and return of 1-3/4 hours deducted pay.

I filed a grievance over issuance of the reprimand under the Agency Administrative Grievance Process. *I have not filed any other EEO grievance under a negotiated grievance procedure or an appeal to the Merit System Protection Board on any of the same matters.*

Respectfully,

*Michael T. Benson*

Michael T. Benson

Enclosure

4



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Public Health Service

DEC 1 5 1997                          Food and Drug Administration
                                      Rockville MD 20857

Mr. Michael Benson
2703 Waco Court
Baltimore, MD 21209

                              Re:  FDA-D-012-98

Dear Mr. Benson:

This is to acknowledge receipt of your discrimination complaint which was officially
filed with this office on November 12, 1997.

Your complaint will be processed pursuant to the provisions of Title 29 Code of Federal
Regulations (CFR) Section 1614.

You will be notified relative to which allegation(s) are accepted and/or dismissed, and of
your rights.  If additional information is needed to clarify your complaint, you will be
contacted promptly.

It will be your obligation to keep this Office informed of your current mailing address
and your current telephone number.  Your failure to keep us so advised may cause a delay
in processing your complaint and may, where appropriate, lead to dismissal of your
complaint.

If you wish to inquire about your complaint, you may write to Mrs. Kaye Tockman,  EEO
Specialist, Office of Equal Employment and Civil Rights, Food and Drug Administration,
Parklawn Building, Room 8-72, 5600 Fishers Lane, Rockville, MD  20857.  If necessary,
she can be reached on (301) 827-4840.

                              Sincerely,

                              *Lena Shelton Clark*

                              Lena Shelton Clark
                              Chief, Complaints and
                                Adjudication Branch
                              Office of Equal Employment
                                and Civil Rights

cc: Margaret Bell, EEO Manager, CDER

5



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Public Health Service

APR 2 4 1998

Food and Drug Administration
Rockville MD 20857

## CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. Michael Benson
2703 Waco Court
Baltimore, MD 21209

Re:    FDA-D-012-98
DOF: 11/12/97

Dear Mr. Benson:

We have accepted the subject complaint of discrimination filed against the Food and Drug
Administration (FDA).  You allege that you were discriminated against on the basis of physical
handicap (post-polio syndrome) when:

1.    On June 17, 1996, you received an official reprimand from your
supervisor.

2.    On May 7, 1996 you were charged with one and three quarter hours of
absent without leave (AWOL) by your supervisor;

3.    On April 15, 1996, you were notified by your supervisor that you would
no longer be authorized to work a flexiplace schedule beginning
April 17, 1996.

4.    You were denied working a flexiplace schedule as a reasonable accommodation
for your physical handicap.

Please advised that this complaint is being processed pursuant to the provisions of Title 29 Code
of Federal Regulations (CFR) Section 1614.  Under the regulations, you will receive a copy of
the investigative file which will include an investigative summary.  Within 30 days of receipt of
the investigative file, you have the right to request a hearing before an EEOC Administrative
Judge or request a final agency decision.

If you have not received the investigative file and investigative summary within 180 days of the
date this complaint was filed, you have the right to request a hearing to be conducted by the
Equal Employment Opportunity Commission or the right to file a civil action in the appropriate
U.S. District Court.  In the absence of notification that you have exercised such rights, the
Agency's processing of this complaint will continue.

(KA) EXHIBIT   5
Page  1  of  2  pages

Page 2 - Mr. Michael Benson
        Agency Case No. FDA-D-012-98

You will be notified before the investigation begins.  Please read the enclosed notice which
provides important information concerning the investigation of this complaint.  Status inquiries
regarding this complaint should be directed to Ms. Kaye Tockman of the Complaints and
Adjudication Branch on  (301) 827-4840.

The Office will coordinate with appropriate officials to provide necessary on-site assistance to
the investigator.  This Office will also notify the appropriate Servicing Personnel Officer to
preserve all existing records pertaining to this complaint.


                        Sincerely,



                        Lena Shelton Clark
                        Chief, Complaints and
                          Adjudication Branch
                        Office of Equal Employment
                          and Civil Rights


Enclosure

cc:     EEO Manager, Center for Drugs Evaluation Research

6

## AFFIDAVIT

I, Michael T. Benson, make the following statement voluntarily to
Thomas A. Statum, identified to me as a Contract Investigator for
Kensington Associates.  I am aware that this statement may be
used in evidence and that it is not confidential.

Q.  What is your name, grade and position title?

A.  Michael T. Benson, GS-660-14, Regulatory Review Pharmacist.


Q.  What is the nature of your complaint?

A.  Food and Drug Administration (FDA) employees have denied me
the right under the Rehabilitation Act of 1973 (29 USC 791) to a
reasonable accommodation of working 2 days a week at my home on
flexiplace.  I have been diagnosed with post polio syndrome of
the respiratory muscles.  This condition together with my severe
scoliosis secondary to poliomyelitis of the abdominal muscles
significantly compromises my pulmonary function.  At times, I
have become hypoxic and hypercapnic.  I live in Baltimore,
Maryland, a drive of approximately 1 hour and 15 minutes each way
to and from work at 9201 Corporate Boulevard, Rockville,
Maryland.  During drives to work in the morning and on days after
arriving at work, I have felt an inability to inspire air
accompanied by a rapid heart beat, and sensed an oxygen
desaturation.


Q.  Could you describe, briefly but clearly, the actions which
gave rise to your complaint?

A.  From November 30, 1994 up to April 17, 1995 I was away from
work at the office and on sick leave for the purpose of having
spinal surgery and of recuperating from it in what turned out to
be an unsuccessful attempt to improve my pulmonary function.  In
March 1995, I was permitted to work 2 days a week from home on
flexiplace and continued to do so.  I returned to work at the
office on April 17, 1995 and continued to work flexiplace on
Tuesdays and Thursdays until April 16, 1996.  After that date, my
former immediate supervisor, Anne Mustafa stopped my use of
flexiplace.

I sought a recommendation from FDA's contract physician,
James Vorosmarti, M.D., to allow me to work flexiplace and
forwarded to him numerous memoranda including, among other things
(1)  a letter from one of my physicians that sitting in a car can
compromise the mechanics of respiration and that since I am
chronically hypoxic, this additional compromise can be

-2-

detrimental to me, and (2) a copy of a DHHS fact sheet (NIH
Publication No. 96-4030) which said that in general, post polio
syndrome is not life threatening; however the only exception is
in patients who experience severe respiratory impairment.  On
October 8, 1996, while driving on the Baltimore Beltway on the
way to work, I experienced an inability to breathe with a strong
tachycardia.  I drove the car to the right shoulder, got out in
the rain, and stood and leaned on the left side of my car hoping
to alleviate those symptoms.  After they were alleviated, I drove
home, called in sick that day, and used 8 hours of sick leave.  I
asked my physician, Dr. Charles Hartjen to notify Dr. Vorosmarti
about the incident and he did.  Despite all of the requests, Dr.
Vorosmarti denied my requests repeatedly.

Subsequently, my immediate supervisor became Linda M. Katz,
M.D. who refused to reinstate my flexiplace work after I asked
her for reinstatement on numerous occasions.  After I updated Dr.
Vorosmarti with several other incidents that occurred to me while
driving to work, he wrote in pertinent part, "I have no objection
to his working at home for two days a week---"  Dr. Katz still
did not allow me to work flexiplace.  I have had several other
incidents subsequent to Dr. Vorosmarti's "no objection" response,
but felt that saying anything more to him was futile.  In one
incident (I believe it was on April 2, 1998), I drove with 2
carpoolers on Shady Grove Road to work, felt an inability to
breathe and a rapid heart beat, and turned into Crabbs Branch Way
to a shopping center to get out of traffic, and to possibly get
help, if necessary.  Subsequently, my heart rate slowed, my
ability to inspire air returned, and I continued to drive to
work.

Q.  Why was the flexiplace scheduling terminated?

A.  Anne Mustafa claimed she held me responsible for an error in
a letter which I drafted.  The letter stated a time deadline
until December 31, 1996 rather than the words "until further
notice."  On April 17th, she said my request for return to
flexiplace over that one letter might have some merit, but
refused to return it claiming that she found my work on certain
other issues as unacceptable.  Her position as my immediate
supervisor ended March 31, 1997.  My next immediate supervisor,
Dr. Linda M. Katz refused to reinstate my flexiplace after
numerous requests.  She said she wanted to see improvement in my
writing.

-3-

On February 12, 1998, Dr. Katz said I could go back on flexiplace one day a week provided a flexiplace agreement was drawn up and signed by all the necessary signatory individuals. I selected Tuesday as the flexiplace day and obtained signatures from all persons except the flexiplace coordinator. On February 23, 1998, I mentioned to Dr. Katz that I might not be able to timely get all the necessary signatures on the agreement and asked if I could work flexiplace on the 24th, in case I could not get all signatures. She said I could not. On February 23, 1998, I obtained all necessary signatures except that of the flexiplace coordinator. On the same date, I left the agreement in the flexiplace coordinator's office since she was not in the office that afternoon. On February 24, 1998, from my home, I called the flexiplace coordinator who said she signed the agreement and it was OK for me to flex. She notified Dr. Katz by E-Mail that I was authorized to work flexiplace. I notified my timekeeper and team leader of my working flexiplace on February 24, 1998.

Prior to February 12, 1998, I indicated on our Russell Calendar Manager computer system my intent to attend a meeting on February 24th at 9:00 AM. After February 12th, I did not cancel my indicated attendance because of the uncertainty of timely getting all signatures on the flexiplace agreement. From my home, I did not have the computer capability of cancelling that indication to attend. Dr. Katz said she had wanted me to be at that meeting, and by E-Mail said that I was off flexiplace until further notice.


Q. Is there anyone else you feel I should talk to regarding your complaint?

A. Yes.

Dr. Bradley (cited in Dr. Vorosmarti's September 5, 1996 memorandum) to find out if Dr. Vorosmarti influenced him to decide against granting me a reasonable accommodation, and if so, how.


Q. Is there anything else you would like to add to this affidavit?

A. Yes. Dr. Vorosmarti in a May 31, 1996 memorandum wrote in pertinent part, "There is no other medical information about his respiratory problem that I feel is needed, but if Mr. Benson wishes to provide whatever he thinks is pertinent I will be happy to review it as long as it is from one of his treating physicians."

(KA) EXHIBIT   5
Page 3 of 5 pages

-4-

From the first clause of the sentence in quotes, I sensed that Dr. Vorosmarti was biased into not giving me a recommendation for accommodation no matter what I would send him. Therefore, I asked Leah Mader, formerly with the Division of Employee Relations, to forward my documentation to a different physician. Instead, new information was sent to Dr. Vorosmarti who in his September 5, 1996 memorandum talks about a Dr. Bradley agreeing with him. Dr. Vorosmarti's role in reviewing the material sent for medical review was against my express request.

In Dr. Vorosmarti's July 23, 1997 memorandum responding to my July 18, 1997 memorandum, he says "I note that he states that he generally only comes to work two days a week. This was never raised as a issue before---." In my May 29, 1996 letter to Dr. Vorosmarti, I wrote on page 2 that I had been working at home on Tuesdays and Thursdays so that it was not necessary for me to ride or drive 2 days in a row to work, and generally worked longer hours for use in taking off on Fridays.

Anne Mustafa stopped my use of flexiplace, claiming on April 16, 1996 that she was not satisfied with my work and that she needed to supervise me closely for a while. On May 6, 1996, I sent an E-Mail to Anne Mustafa requesting her authorization to work flexiplace on May 7th because my perception was that she didn't supervise me more closely than before she stopped my flexiplace work. I awaited her response at home. She called me sometime after 9:00 AM on May 7, 1996 to tell me to come in. I drove to the office and she charged me with 1-3/4 hours of AWOL.

I have heard that a female coworker within my division drafted a letter which issued with an incorrect date, and that Anne Mustafa found out about that incorrect date and took no adverse action against the drafter of that letter.

On October 8, 1996, while I waited in the rain outside my car, a driver pulled in front of me and stopped to see if she could help me. My heart rate began to slow down and my breathing began to be somewhat more comfortable. I thanked her for her offer and said I thought I could make it home. I wrote down the license tag number of the vehicle she drove as Maryland SRN 419.

In a performance evaluation for the period September 16, 1996 to March 31, 1997, Anne Mustafa rated me on an item outside the comment period, and it was lower than I thought I deserved. That matter dealt with a judgment call on whether a response was to be short or long. It was not erroneous as to substance. She also omitted to rate me on a matter that I believe was important and that she ought to have seen years ago. I believe that mentioning the item would have been fair and favorable to my evaluation.

(M) EXHIBIT 5
Page 4 of 5 pages

-5-

In late July 1997, I presented to Debra L. Bowen, M.D., supervisor to Dr. Katz, a copy of the above-mentioned NIH Publication No. 96-4030. The part about post polio syndrome being life threatening to people with respiratory impairment was underscored for emphasis. I asked her to give it to Dr. Katz. She either said or implied to me that she would. About 2 weeks later in August 1997, I showed to Dr. Katz a copy of that NIH publication and asked her if she received the paper from Dr. Bowen. Dr. Katz said she did not get it. I gave her a copy. Still, she would not reinstitute my flexiplace schedule.

In an E-Mail message dated August 11, 1997, Debra Bowen said that Gerry Rachanow and Anne Mustafa will review documents. I worked on a document reviewed by Gerry Rachanow. I had asked Dr. Katz to give no weight to Anne Mustafa's opinions and stated that Anne Mustafa's input into my performance rating has been biased to evaluating me in an unfavorable light by accentuating the negative and omitting the positive. In a final performance evaluation dated February 12, 1998, I was informed by Dr. Katz that Gerry Rachanow's input was not obtained, and that Anne Mustafa's input was obtained.

With regard to observance of flexiplace agreements, I have heard that many people within the Division of OTC Drug Products have continued to work flexiplace schedules beyond the expiration dates of their agreements, and that those agreements were not renewed as of their expiration dates. I worked flexiplace beyond the expiration date of March 1, 1996 in my first flexiplace agreement.

I swear under penalty of perjury that the above statement is true and complete, to the best of my knowledge and belief. I have read this statement, consisting of 5 pages and have initialed each page.

MICHAEL T. BENSON                           6-18-98
                                            DATE

7

# DEPARTMENT OF HEALTH AND HUMAN SERVICES FLEXIBLE WORKPLACE PROJECT WORK AGREEMENT

The following constitutes an agreement between:

FDA, CDER, Office of OTC Drug Evaluation, Drug Policy Staff, and Michael T. Benson of the terms and conditions of the Flexible Workplace Project.

1.  Employee volunteers to participate in the agency's Flexible Workplace Project and to adhere to the applicable guidelines and policies. Agency concurs with employee participation and agrees to adhere to the applicable guidelines and policies.

2.  Employee agrees to participate in the project for a period not to exceed one year, beginning March 1, 1995 and ending March 6, 1996.

3.  Employee's official tour of duty at the office will be: 7:00 a.m. to 3:30 p.m. (including a one-half hour nonpaid lunch period) on Monday through Friday. Flexiplace schedule will be 8:30 a.m. to 5:00 p.m. on Tuesday and Thursday.

4.  Employee's official duty station: MPN, 7520 Standish Place, Rockville, Maryland 20855, Rm. 211.

The alternate duty station (the location in which the employee is designated to work while not at the official duty station) is: 2703 Waco Court, Baltimore, Maryland 21209

Describe the designated work area in detail: Room with a desk, computer, modem, printer, and a locking file cabinet.

All pay, special salary rates, leave, and travel entitlements will be based on the employee's official duty station.

5.  Employee's timekeeper will have a copy of the employee's flexible workplace schedule. Employee's time and attendance will be recorded as performing official duties at the official duty station. Employee will sign a certification each pay period that shows the hours worked by the employee.

6.  Employees must obtain supervisory approval before taking leave in accordance with procedures established by the supervisor. By signing this agreement, employee agrees to follow established procedures for requesting and obtaining approval of leave.



Flexible Workplace Project Work Agreement                    Page 2

7.    Employee will continue to work in pay status while working at his residence.  If
      employee works overtime that has been ordered and approved in advance, he will
      be compensated in accordance with applicable law, regulation, and FPM
      guidance.  The employee understands that the supervisor will not accept the
      results of unapproved overtime work and will act vigorously to discourage it.  By
      signing this agreement, employee agrees that failing to obtain proper approval for
      overtime work may result in his removal from the Flexible Workplace project and
      other appropriate action.

8.    If employee borrows Government equipment, employee will borrow and protect
      the Government equipment in accordance with the procedures established in
      FIRMR Bulletin 30, October 15, 1985.  Government owned equipment will be
      serviced and maintained by the Government.   If employee provides own
      equipment,  he is responsible for servicing and maintaining it.

9.    Provided the employee is given at least 24 hours advance notice, the employee
      agrees to permit  periodic home inspections by the Government of the employee's
      home work site at  periodic intervals during the employee's normal working hours
      to ensure proper maintenance of "Government owned property" and work site
      conformance with safety standards and other specifications in these guidelines.

      Any accident or injury occurring at the alternate duty station must be brought to
      the immediate attention of the supervisor.  Because an employment-based accident
      sustained by a flexiplace employee will occur outside of the premises of the official
      duty station, the supervisor must investigate all reports immediately following
      notification.

10.   The Government  will not be liable for damages to an employee's personal or real
      property during the course of  performance of official duties or while using
      Government equipment in the employee's residence,  except to the extent the
      Government is held liable by Federal Tort Claims Act or claims arising under the
      Military Personnel and Civilian Employees Claims Act.

11.   The Government will not be responsible for operating costs,  home maintenance,
      or any other incidental cost (e.g., utilities) whatsover associated with the use of the
      employee's residence.  By participating in this pilot program, the employee does
      not relinquish any entitlement to reimbursement for authorized expenses incurred
      while conducting business for the Government, as provided for by statute and
      implementing regulations.

Flexible Workplace Project Work Agreement                                    Page 3

12.    Employee is covered under Federal Employee's Compensation Act if injured in the
       course of actually performing official duties at the official duty station or the
       alternate duty station.

13.    Employee will meet with the supervisor to receive assignments and to review
       completed work as necessary or appropriate.

14.    Employee will complete all assigned work according to work procedures discussed
       between the employee and the supervisor to receive assignments and to review
       completed work as necessary or appropriate.

15.    Employee's job performance will be appraised in accordance with his performance
       plan.

16.    At intervals specified in the Federal Flexible Workplace guidelines, the supervisor
       and the employee will complete surveys which summarize flexible workplace
       impact on the office, the employee, the supervisor, and other organizational
       elements.

17.    Employee's most recent performance rating of record must be at least fully
       successful.

18.    Employee's current performance plan contains performance standards covering
       work completed at the office (official duty station) as well as work completed at
       the employee's residence (alternate duty station).

19.    Employee will apply approved safeguards to protect Government/Agency records
       from unauthorized disclosure or damage and will comply with the Privacy Act
       requirements set forth in the Privacy Act of 1974, Public Law 93-579, codified at
       Section 552a, title 5 U.S.C.

20.    Employee and supervisor agree to promptly complete and submit evaluation
       materials and to attend periodic focus group meetings as required by the
       guidelines.

21.    Employee may terminate participation in this project at any time.  Management
       has the right to remove the employee from the project for such reasons as: the
       employee's performance declines, the project fails to benefit organizational needs,
       the employee performs unapproved overtime work, etc.

Flexible Workplace Project Work Agreement                    Page 4

22.    Employee agrees to limit his performance of his officially assigned duties to his
official duty station or to agency-approved alternate duty stations. Failure to
comply with this provision may result in loss of pay, termination of the flexible
workplace arrangement, and/or other appropriate disciplinary action.

23.    Employee is responsible for ensuring the safety and adequacy of the home
workplace and for ensuring applicable building and safety codes are met. This
includes but is not limited to: assuring that the home's electrical system is
adequate for the use of Government equipment, safeguarding Government
equipment from children and pets, and providing smoke detectors if required by
the applicable building code. (Employees are encouraged to provide smoke
detectors even if not required by the building code.)

24.    All Government-provided equipment is for official business. Employees are
prohibited from using such equipment for private purposes.

25.    The standards of conduct continue to apply to employees at their alternate duty
station.

_____          2/23/95
SUPERVISOR                                    Date

_____          2/24/95
EMPLOYEE                                      Date
Michael T. Benson

*
_____          _____
AGENCY PROJECT COORDINATOR                    Date
             Date

_____          _____
DIRECTOR, OFFICE OF MANAGEMENT, CDER          Date
       Date

Flexiplace Participant
Information Sheet

Participant:
    Name:                    Michael T. Benson
    Grade and Series:       GS-0660-14
    HFD#                  HFD-820

    Office Address:         Room 211, MPN-1
                             7520 Standish Place
                             Rockville, MD  20855

    Office Phone:           301-594-1006
    Tour:                  ~~Monday - Friday~~ _7:00 a.m. to 3:30 p.m._
    Days:                  Monday, ~~Wednesday~~, Friday
                             _Through_

    Home Address:        2703 Waco Court
                             Baltimore, Maryland  21209
    Home Phone:          410-484-7262
    Tour:                  ~~Monday-Friday~~ _8:30 a.m. – 5:00 p.m._
    Days:                  Tuesday, Thursday

Participant's Supervisor:
    Name:                    Michael D. Kennedy
    Title:                    Director, OTC Drug Policy Staff
    Grade and Series:       GM-401-14
    Office Phone:           301-594-1006

(KA) EXHIBIT   7
Page  5  of  5  pages

8

E L E C T R O N I C    M A I L    M E S S A G E

| | |
|---|---|
| Date: | 16-Apr-1996 10:59am EDT |
| From: | Anne Mustafa |
| | MUSTAFA |
| Dept: | HFD-560    CORP S242 |
| Tel No: | 301-827-2245 FAX 301-827-2315 |

TO:  Michael Benson                    ( BENSON )

CC:  Debra Bowen                       ( BOWEND )

Subject: Meeting re 1-desoxyephedrine

Mike,

Debi made it clear in her e-mail to you that she does not want to meet
again on this issue at this time.  I was very surprised to see that the
meeting had been set up in the Russell calendar as if it was Debi's
meeting.  When I asked Linda Roberts about it, she said that you had
asked her to set up the meeting.  I told Linda that I knew that Debi did
not want to meet at this time and asked her to cancel the meeting.

Actually, you should have requested the meeting yourself through the
Russell Calendar so that it would have been clear that you wanted the
meeting and it would then give Debi the opportunity to let you know that
she did or did not want to attend.

  this point, I see no further need to pursue this matter unless you
  d GR agree on a different scenario than we came up with at the meeting
last week.  So, unless you and he agree the story is different or you
have other hard evidence that you did not work on the document, this
issue is closed.

Regardless of how the document got changed, you were responsible for
drafting the letter correctly and it is time for you to acknowledge that
responsibility and that you dropped the ball.  I will still be required
to supervise you closely for a while to make sure that the same
embarrassment for the agency does not occur again.  Therefore, you are
no longer approved for working a flexiplace schedule.

If you are not clear on any of the above, please let me know by COB
today.

Anne

(KA) EXHIBIT____8____
Page__1__of__1__pages