# EXHIBIT N



DEPARTMENT OF HEALTH & HUMAN SERVICES

Public Health Service
Food and Drug Administration

# Memorandum

| | |
|---|---|
| **Date** | ·January 29, 1999 |
| **From** | Director<br>Office of Drug Evaluation V, Center for Drug Evaluation and Research |
| **Subject** | Track 2, Stage 2 Grievance Decision |
| **To** | Michael T. Benson<br>Regulatory Review Pharmacist<br>Division of Over-the-Counter Drug Products<br>Office of Drug Evaluation V<br>Center for Drug Evaluation and Research |

On November 17, 1998, you filed a grievance concerning two issues: (1) a three-day suspension imposed by the Director, Division of Over-the-Counter Drug Products, for failure to follow instructions; and (2) the denial of your request to work at home on a Flexiplace schedule. I have carefully reviewed the documents you provided in your grievance, as well as documents from the official case file maintained by the Office of Human Resources and Management Services. On December 16, 1998, I requested an extension of time to respond to your grievance and you agreed to this extension. I also asked if you desired to make an oral presentation of your grievance and you responded affirmatively. On January 11, 1999, you made your oral presentation, and I have taken into consideration the information you provided at that presentation.

My conclusions on the issues of your grievance are as follows:

1. <u>Three-Day Suspension</u>

a. <u>Prior Approval of Flexible Workplace Arrangements Program (FWAP) Agreement</u>

> You argue in your grievance that you were never instructed by Dr. Katz not to personally deliver the FWAP Agreement to Ms. Shelley Johnson, the CDER FWAP Coordinator, nor were you told that the Agreement must be signed by close of business on February 23, 1998. You stated in your oral presentation that this was a matter of interpretation, rather than negligence on your part.
>
> I have reviewed the CDER Manual of Policies and Procedures (MAPP) 6002.2 which states, in paragraph 5 under Policy, "All periods of

participation in the FWAP, on a long-term or short-term basis, must be approved in advance." I believe a reasonable person would conclude that the term "in advance" would mean at least the prior workday. I concur with both Dr. Katz and Dr. Bowen that approval of the FWAP by Ms. Johnson only minutes before you were scheduled to begin work on February 24, 1998 was not sufficient.

b.      Attendance at NDA Conference with Soltec

You attached to your grievance a copy of a Russell Calendar Manager printout showing a notice that individuals can be teleconferenced into meetings while working at home. However, the Center policy, contained in MAPP 6002.2, paragraph 10 under Policy, clearly states, "Employees participating in the FWAP are expected to attend meetings at the official duty station even when such meetings are scheduled on the employee's date to work at an alternative work site." Even assuming that your FWAP Agreement was approved, you would have been expected to attend the Soltec meeting. Furthermore, you had confirmed in the Calendar Manager that you would be attending.

You also state in your grievance, "The uncertainty of who is chairperson is a problem...." My understanding is that you believe that this lack of clarity regarding who was to chair the meeting should mitigate your responsibility for your failure to attend the meeting. However, regardless of whether you were officially designated as the meeting chair, you had a major role in review of the "Ban Louse" product and you were clearly expected to personally attend the meeting with Soltec. Your absence caused an inconvenience to the Division and to the sponsor.

I have concluded that the charge of failure to follow instructions, as well as the specifications cited in Dr. Bowen's Decision on Proposed Suspension memorandum dated October 23, 1998, are supported. However, I have taken into consideration your position that you did not intentionally violate Dr. Katz's instruction, but that you misinterpreted her instructions. Therefore, I have decided to reduce the length of your suspension from three days to two days. Accordingly, the personnel action effecting the suspension will be changed and your pay for one day will be restored.

2.      Cancellation of Flexible Workplace Arrangements Program

You have raised the issue of reasonable accommodation and argue that you are entitled to participate in the FWAP due to your medical condition. During your oral presentation,

you demonstrated the use of a volume ventilator and explained the difficulty you experience while driving to work. You also stated in your written grievance, as well as during your oral presentation, your belief that Dr. James Vorosmarti, the FDA Medical Consultant, is biased against you.

I have reviewed the record in this matter and find that the Agency has acted properly in denying FWAP as an accommodation based upon your failure to provide acceptable medical documentation to support a conclusion that your request is medically necessary, as determined by FDA's Division of Ethics and Labor Management Relations (DELMR) with the advice of their consultant physician. I saw no evidence that established bias on the part of Dr. Vorosmarti. Therefore, I am denying your grievance and requested relief (FWAP as an accommodation for medical condition).

Of course, you are entitled to provide additional medical documentation, and if a finding of a medical condition that requires consideration of special accommodation is established in the future, we will work with you on determining what accommodations are possible and appropriate. Additional documentation should be provided to DELMR, either directly or through your supervisor.

In conclusion, I am denying your requested relief and your grievance. However, as noted above, I am reducing the duration of your suspension from three days to two days.

In accordance with Interim Memoranda of Understanding (MOU) #1 and #3 (dated April 20, 1998, and July 9, 1998, respectively) between the FDA and the National Treasury Employees Union (NTEU), FDA's Dispute Resolution System (FDA Instruction 771-1) will be the vehicle for resolving grievances, with the additional step of binding arbitration which may be invoked only by NTEU. A request for binding arbitration must be made within twenty-one (21) calendar days after receipt of the Track 2, Stage 2 decision. Therefore, if you want to request that NTEU pursue arbitration, you should contact Dr. Robert S. K. Young, Interim President, NTEU Chapter 282, for any deadlines by which NTEU must be notified by you, so that a timely arbitration request can be made by NTEU, if it chooses to do so.

Robert DeLap, M.D., Ph.D.

I acknowledge receipt of the original of this memorandum: _____

M. Benson          (date)

# EXHIBIT O



February 18, 1999

**Via FAX and**
**Certified Mail**
**Return Receipt Requested**

Ms. Kathy Vengazo
Director
Division of Ethics and Labor Management
Food and Drug Administration
Rockville, MD 20852

      Re: Grievance of Michael Benson

Dear Ms. Vengazo:

      Please be advised that the National Treasury Employees Union hereby invokes arbitration in the above-referenced matter of Michael Benson.

      Please refer all inquiries in this matter to Sharon Quinn Harris, Assistant Counsel, NTEU, 901 E Street, NW, Suite 100, Washington, DC 20004.  Ms. Harris may also be reached at (202) 638-7760.

      Sincerely,

      Robert M. Tobias (by Staff)

      Robert M. Tobias
      National President

cc: Sharon Quinn Harris
    Robert Young, President, Chapter 282
    Joy Lazaroff, Chief Steward, Chapter 282

901 E Street, N.W. • Suite 600 • Washington, D.C. 20004-2037 • (202) 783-4444

# EXHIBIT P



October 17, 2002

**VIA FACSIMILE AND**
**REGULAR MAIL**

Ms. Gail Pierpoint, Director
Division of Employee and Labor Management Relations
Food and Drug Administration
5600 Fishers Lane
Rockville, MD 20852

    **RE: Michael Benson Arbitration**

Dear Ms. Pierpoint:

    Please be advised that NTEU hereby withdraws the above referenced case originally filed on February 18, 1999.

    Please refer all future inquiries and correspondence to Eugene Freedman, Assistant Counsel, NTEU 901 E St., N.W., Suite 100, Washington, DC 20004.

                    Sincerely,

                    Colleen M. Kelley
                    National President

cc: Robert S.K. Young, President NTEU Chapter 282
    Sharon Quinn Harris, National Counsel, NTEU

# EXHIBIT Q

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MICHAEL T. BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. MJG-02-CV-3626 |
| | ) | |
| TOMMY G. THOMPSON, SECRETARY, | ) | |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF**
**LINDA M. KATZ, M.D.**

1.  My name is Linda M. Katz and I am currently the Director of the Office of Cosmetics and Colors, Center for Food Safety and Applied Nutrition, Food and Drug Administration ("FDA"), Department of Health and Human Services.  Prior to holding my current position, I was the Deputy Director of the Division of Over-the-Counter Drug Products ("DOTCDP"), Office of Drug Evaluation V, Center for Drug Evaluation and Research, FDA, until September 2002.

2.  In my former position of Deputy Director of DOTCDP, I was Michael Benson's immediate supervisor from on or about April 1, 1997 to September 2002.

3.  When I became Mr. Benson's supervisor, I understood from my conversations with Anne Mustafa that he had been removed from the Flexible Workplace Arrangements Program

("FWAP") the previous year due to the need to supervise him more closely following a major error he made in replying to a citizen petition.

4. In early February 1998, I agreed to reinstate Mr. Benson to FWAP on a trial basis, for one day (Tuesday) of each week, effective February 24, 1998.

5. After I gave my written approval for the restoration of Mr. Benson's FWAP privileges on February 20, 1998, not all other required written approvals had been obtained by the close of business on February 23, 1998. Thus, on that date, I informed Mr. Benson that I expected him to report to the office the following day, and that the agreement would take effect the following week.

6. On February 24, 1998 at 9:00 a.m., I attended the New Drug Application ("NDA") conference with Soltec PTY, Ltd. held at the offices of the DOTCDP regarding its NDA deviation for Rid Mousse (21-043), for which Mr. Benson was the lead person. Despite having acknowledged with the calendar manager that he would attend this meeting and my specific instruction to him the previous day, Mr. Benson did not report to the office, nor did he contact me to report that he was working at home on FWAP.

7. When I called Mr. Benson at home, he downplayed the importance of his attendance at the meeting and did not take responsibility for his actions.

8. I consulted the employee relations office for assistance in determining the most appropriate discipline for Mr. Benson's misconduct. In light of Mr. Benson's prior official reprimand from Anne Mustafa for having failed to report to work after his termination from FWAP in 1996, I sent Mr. Benson a notice of proposed three-day suspension, and I revoked his FWAP privileges. Mr. Benson filed a grievance challenging these two actions.

2

9. I cannot recall when I became aware that Mr. Benson had filed an EEO complaint against Ms. Mustafa. I gave no consideration to Mr. Benson's prior EEO activity when I decided to discipline him for his failure to follow my instructions on February 24, 1998. Rather, his prior misconduct involving a very similar incident, the burden on the office caused by his absence from a meeting for which he had lead responsibility, and his failure to take responsibility for his actions weighed heavily in my decision to propose a three-day suspension.

10. In October 1998, Mr. Benson requested authorization to work from home four days each week as a medical accommodation. In support of this request, he submitted a September 28, 1998 letter from John R. Bach, M.D., which was in turn forwarded to FDA's medical consultant, James Vorosmarti, M.D. The medical documentation provided by Mr. Benson did not demonstrate to Dr. Vorosmarti's satisfaction the therapeutic value of the requested accommodation. As a result, I denied the request and offered Mr. Benson the opportunity to submit additional medical documentation. I forwarded this additional documentation to Dr. Vorosmarti, who ultimately concluded that allowing Mr. Benson to work from home was not warranted.

11. Although Mr. Benson's request to work from home as a reasonable accommodation was not approved in the Fall of 1998, on February 22, 1999, I approved Mr. Benson's reinstatement in FWAP on a trial basis for one day each week for four months. See Attachment 1 to this Declaration.

12. On May 27, 1999, I renewed Mr. Benson's participation in FWAP for a second four-month trial period, for two days each week. The standard FWAP agreement signed by Mr. Benson included the requirement that the "Employee's most recent performance rating of record

3

must be at least excellent before participation in a flexible work arrangement may be approved."
See Attachment 2 to this Declaration.

13. Unfortunately, Mr. Benson's performance did not meet all performance standards, and on July 28, 1999, I met with Mr. Benson and pointed out where he needed to improve in order meet all performance measures.

14. On January 31, 2000, I gave Mr. Benson an overall performance rating of "fails to meet performance measures" for calendar year 1999. I found that Mr. Benson failed to meet two elements; individual work management and monograph documents. Mr. Benson failed to meet the individual work management element because he needed much more supervision than one would expect for a person in his grade, he did not take the initiative to devise effective solutions, and his work was often submitted just before management due dates, providing inadequate time for the extensive reviews that were often required. Similarly, he failed to meet the monograph documents element because his written work product often required extensive rewrites, and he often needed help with simple tasks such as formatting and organizing documents.

15. I did not give Mr. Benson an unsatisfactory performance rating because of his prior EEO activity against Ms. Mustafa and his prior grievance against me. Rather, Mr. Benson's rating reflected his performance, and he was in need of a Performance Improvement Plan.

16. Mr. Benson filed a grievance challenging his performance rating, and his rating ultimately was rescinded because the plan on which he was rated included "team leader" elements, and he was not a team leader.

4

17.  Although Mr. Benson was not reinstated in FWAP because of his unsatisfactory performance rating, he was reinstated for one day each week after his rating of record was rescinded.

18.  I decided to reinstate Mr. Benson in FWAP for one day a week as opposed to two because he still needed considerable prodding to get the work done, and his work needed extensive revisions.  Thus, I did not feel that permitting him to work from home two days a week would be beneficial to the office.  Another employee under my supervision who had similar performance problems was also permitted to work from home only one day a week.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated at Washington, D.C., this ____9th____ day of April, 2003.


LINDA M. KATZ, M.D.

5

## FDA/CENTER FOR DRUG EVALUATION AND RESEARCH
## FLEXIBLE WORKPLACE ARRANGEMENTS PROGRAM (FWAP) AGREEMENT
### (Civilian Employees)



RECEIVED
JUN 9 1999

The following constitutes an agreement between:

FDA, CDER, Office of Drug Evaluation V, Division of OTC Drug Products, and Michael T. Benson of the terms and conditions of a Flexible Workplace Arrangement.

1. Employee volunteers to participate in a flexible workplace arrangement and to adhere to the applicable guidelines and policies. FDA, CDER, Office of Drug Evaluation V, Division of OTC Drug Products concurs with employee participation and agrees to adhere to the applicable guidelines and policies.

2. Employee agrees to participate in the arrangement beginning **June 2, 1999** and ending **June 2, 2000.**

3. Employee's official tour of duty at the office will be: **8:00AM-4:30PM** (including a one-half hour nonpaid lunch period) on **Monday, Wednesday, and Friday.** Flexiplace schedule official tour of duty at the alternate duty station will be: **8:30AM-5:00PM** (including a one-half hour nonpaid lunch period) on **Tuesday and Thursday.**

4. Employee's official duty station is: **9201 Corporate Boulevard, Rockville, MD 20857.** The alternate duty station (the location in which the employee is designated to work while not at the official duty station) is: **2703 Waco Court, Baltimore, MD 21209.** All pay, leave, and travel entitlements will be based on the employee's official duty station.

Description of the designated work area within the alternate duty station: **room with desk, computer and lockable file drawer.**

5. Employee's timekeeper will have a copy of the employee's flexible workplace schedule. Employee's time and attendance will be recorded as performing official duties at the official duty station. Employee will certify each pay period the hours worked and will provide a leave slip, as appropriate, for any hours not worked under the agreement during a pay period.

6. Employee, with supervisor's approval, may work a flexitime, maxiflex, or compressed work schedule in accordance with his/her organization-specific Alternative Work Schedules plan. The schedule must be consistent with the nature of the work being performed and the frequency of communication necessary with those at the official work site or with work contacts in other locations. Employees may earn, with prior supervisory approval, credit time.

7. Employees must obtain supervisory approval before taking leave in accordance with procedures established by the supervisor. By signing this agreement, employee agrees to follow established procedures for requesting and obtaining approval of leave.

8. Employee will continue to work in pay status while working at his/her alternate work site. All overtime must be ordered and approved in advance, and will be compensated in accordance with applicable laws and regulations. By signing this agreement, employee agrees that failing to obtain proper approval for overtime work may result in his/her removal from the Flexible Workplace Arrangement Program and other action as appropriate.

9. If employee borrows Government equipment, employee will borrow and protect the Government equipment in accordance with the procedures established in FIRMR Bulletin 30, October 15, 1985. Government-owned equipment will be serviced and maintained by the Government. If employee provides his/her own equipment, he/she is responsible for servicing and maintaining it.

**Flexible Workplace Arrangements Program Agreement - Page 2**

10.  Provided the employee is given at least 24 hours advance notice, the employee agrees to permit periodic home inspections by the Government of the employee's home work site at periodic intervals during the employee's normal working hours to ensure proper maintenance of Government-owned property and work site conformance with safety standards and other specifications in these guidelines.

11. The Government will not be liable for damages to an employee's personal or real property during the course of performance of official duties or while using Government equipment in the employee's residence, except to the extent the Government is held liable by Federal Tort Claims Act claims or claims arising under the Military Personnel and Civilian Employees Claims Act.

12. The Government will not be responsible for operating costs, home maintenance, or any other incidental cost (e.g., utilities) whatsoever, associated with the use of the employee's residence if the residence is approved as the alternate work site.  By participating in this program, the employee does not relinquish any entitlement to reimbursement for authorized expenses incurred while conducting business for the Government, as provided for by statute and implementing regulations.

13. Employee is covered under Federal Employee's Compensation Act if injured in the course of actually performing official duties at the official duty station or the alternate duty station.

14. Employee will meet with the supervisor to receive assignments and to review completed work as necessary or appropriate.

15. Employee will complete all assigned work according to work procedures discussed between the employee and the supervisor and according to guidelines and standards stated in the employee's performance plan.

16. Employee's job performance will be appraised in accordance with his/her performance plan.

17. Employee's most recent performance rating of record must be at least excellent before participation in a flexible work arrangement may be approved.

18. Employee's current performance plan will contain performance standards covering work completed at the office (official duty station) as well as work completed at the employee's residence (alternate duty station).

19. Employee will apply approved safeguards to protect Government/Agency records from unauthorized disclosure or damage and will comply with the Privacy Act requirements set forth in the Privacy Act of 1974, Public Law 93-579, codified at Section 552a, Title 5 U.S.C.

20. Employee and management have the right to terminate participation in the FWAP at any time. Management has the right to remove the employee from the program for such reasons as:  the employee's performance declines, the arrangement fails to benefit organizational needs, the employee performs unapproved overtime work, etc.

21. Employee agrees to limit the performance of his/her officially assigned duties to his/her official duty station or to agency-approved alternate duty stations.  Failure to comply with this provision may result in loss of pay, termination of the flexible workplace arrangement, and/or other appropriate disciplinary action.

22. Employee is responsible for ensuring the safety and adequacy of the home workplace and for ensuring applicable building and safety codes are met.  This includes but is not limited to:  assuring that the home's electrical system is adequate for the use of Government equipment, safeguarding Government equipment

**Flexible Workplace Arrangements Program Agreement - Page 3**

from children and pets, and providing smoke detectors if required by the applicable building code. (Employees are encouraged to provide smoke detectors even if not required by the building code.)

23.  If any government-owned computer equipment, software and/or peripherals are to be used in the home site, and/or if any government records are to be electronically accessed from the home site, and approved Off-Site Computing Request will become part of this agreement.

24. All Government-provided equipment is for official business only.  Employees are prohibited from using such equipment for private purposes.

25. The standards of conduct continue to apply to employees at their alternate duty station.

26.  At specified intervals, the supervisor and the employee will conduct an evaluation which summarizes the flexible workplace impact on the office, the employee, the supervisor, and other organizational elements.

_Michael T. Benson_                                    5-26-99
Michael T.  Benson, Employee                           Date

_Cazemiro Martin_                                      6/1/99
Cazemiro Martin, Acting Team Leader                    Date

_Linda M. Katz_                                        6-1-99
Linda M. Katz, M.D., Supervisor                        Date

_Debra Bowen_                                          6/4/99   See attachment
Debra L. Bowen, M.D., Division Acting Director         Date     for conditions
                                                                of participation
                                                                between supervisor &
_Robert DeLap_                                         6/4/1999  employee.
Robert DeLap, M.D., Ph.D., Office Director             Date
(Approving Official)

_CDER FWAP Coordinator_                                6/9/99
CDER FWAP Coordinator                                  Date Reviewed

**Flexible Workplace Arrangements Program Agreement - Page 4**

FWAP Participant Information Sheet

Participant:

| | |
|---|---|
| Name: | Michael T. Benson |
| Grade and Series: | GS-660-14 |
| HFD: | 560 |
| Office Address: | Rm.  S230, 9201 Corporate Blvd., Rockville, MD<br>Tour of Duty:  8:00am to 4:30pm<br>Monday, Wednesday, Thursday, and Friday |
| Office Phone: | (301) 827-2311 |
| Home Address: | 2703 Waco Court, Baltimore, MD  21209<br>Tour of Duty:  8:30am to 5:00 pm<br>        Tuesday |
| Home Phone: | 410-484-7262 |

Participant's Supervisor:

| | |
|---|---|
| Name: | Linda M. Katz, M.D. |
| Title: | Deputy Director<br>Division of OTC Drug Products |
| Grade and Series: | GS-0602-15 |
| Office Phone: | (301) 827-2272 |

| | |
|---|---|
| Division Director<br>    (Acting): | Debra L. Bowen, M.D. |
| Office Director: | Robert DeLap, M.D., Ph.D. |

**M E M O R A N D U M**    **DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**
**FOOD AND DRUG ADMINISTRATION**
**CENTER FOR DRUG EVALUATION AND RESEARCH**


**DATE:**    February 22, 1999

**FROM:**    Linda M. Katz, M.D., M.P.H.
Deputy Director,, Division of Over-the-Counter Drug Products

**TO:**    Michael Benson

**SUBJECT:**    Flexiplace


As we discussed on Februrary 11, 1999, you may request to do flexiplace for one day per week
for a conditional 4 month period, at which time your performance will be reassessed. During
this time, it is expected that you will follow the MaPP, with specific regard to meeting
attendance, recordation of time and work performance. However, you are reminded that you
cannot begin flexiplace until the propoer documentation has been executed and until you are
formally notified by me that it has been approved.

2-22-99

**FDA/CENTER FOR DRUG EVALUATION AND RESEARCH**
**FLEXIBLE WORKPLACE ARRANGEMENTS PROGRAM (FWAP) AGREEMENT** Renewal
(Civilian Employees)

MAR 8 1999

The following constitutes an agreement between:

FDA, CDER, Office of Drug Evaluation V, Division of OTC Drug Products, and **Michael T. Benson** of the terms and conditions of a Flexible Workplace Arrangement.

1.  Employee volunteers to participate in a flexible workplace arrangement and to adhere to the applicable guidelines and policies.  FDA, CDER, Office of Drug Evaluation V, Division of OTC Drug Products concurs with employee participation and agrees to adhere to the applicable guidelines and policies.

2.  Employee agrees to participate in the arrangement beginning **March 2, 1999** and ending **June 2, 1999.**

3.  Employee's official tour of duty at the office will be: **8:00AM-4:30PM** (including a one-half hour nonpaid lunch period) on **Monday, Wednesday, Thursday and Friday.**  Flexiplace schedule official tour of duty at the alternate duty station will be: **8:30AM-5:00PM** (including a one-half hour nonpaid lunch period) on **Tuesday.**

4.  Employee's official duty station is: **9201 Corporate Boulevard, Rockville, MD 20857.**  The alternate duty station (the location in which the employee is designated to work while not at the official duty station) is: **2703 Waco Court, Baltimore, MD  21209.**  All pay, leave, and travel entitlements will be based on the employee's official duty station.

Description of the designated work area within the alternate duty station: **room with desk, computer and lockable file drawer..**

5.  Employee's timekeeper will have a copy of the employee's flexible workplace schedule.  Employee's time and attendance will be recorded as performing official duties at the official duty station.  Employee will certify each pay period the hours worked and will provide a leave slip, as appropriate, for any hours not worked under the agreement during a pay period.

6.  Employee, with supervisor's approval, may work a flexitime, maxiflex, or compressed work schedule in accordance with his/her organization-specific Alternative Work Schedules plan.  The schedule must be consistent with the nature of the work being performed and the frequency of communication necessary with those at the official work site or with work contacts in other locations. ~~Employees may earn, with prior supervisory approval, credit time.~~ *not at alternate site (See ODE-V WPP).*

7.  Employees must obtain supervisory approval before taking leave in accordance with procedures established by the supervisor.  By signing this agreement, employee agrees to follow established procedures for requesting and obtaining approval of leave.

8.  Employee will continue to work in pay status while working at his/her alternate work site.  All overtime must be ordered and approved in advance, and will be compensated in accordance with applicable laws and regulations.  By signing this agreement, employee agrees that failing to obtain proper approval for overtime work may result in his/her removal from the Flexible Workplace Arrangement Program and other action as appropriate.

9.  If employee borrows Government equipment, employee will borrow and protect the Government equipment in accordance with the procedures established in FIRMR Bulletin 30, October 15, 1985. Government-owned equipment will be serviced and maintained by the Government.  If employee provides his/her own equipment, he/she is responsible for servicing and maintaining it.

**Flexible Workplace Arrangements Program Agreement - Page 2**

10.  Provided the employee is given at least 24 hours advance notice, the employee agrees to permit periodic home inspections by the Government of the employee's home work site at periodic intervals during the employee's normal working hours to ensure proper maintenance of Government-owned property and work site conformance with safety standards and other specifications in these guidelines.

11. The Government will not be liable for damages to an employee's personal or real property during the course of performance of official duties or while using Government equipment in the employee's residence, except to the extent the Government is held liable by Federal Tort Claims Act claims or claims arising under the Military Personnel and Civilian Employees Claims Act.

12. The Government will not be responsible for operating costs, home maintenance, or any other incidental cost (e.g., utilities) whatsoever, associated with the use of the employee's residence if the residence is approved as the alternate work site.  By participating in this program, the employee does not relinquish any entitlement to reimbursement for authorized expenses incurred while conducting business for the Government, as provided for by statute and implementing regulations.

13. Employee is covered under Federal Employee's Compensation Act if injured in the course of actually performing official duties at the official duty station or the alternate duty station.

14. Employee will meet with the supervisor to receive assignments and to review completed work as necessary or appropriate.

15. Employee will complete all assigned work according to work procedures discussed between the employee and the supervisor and according to guidelines and standards stated in the employee's performance plan.

16. Employee's job performance will be appraised in accordance with his/her performance plan.

17. Employee's most recent performance rating of record must be at least excellent before participation in a flexible work arrangement may be approved.

18. Employee's current performance plan will contain performance standards covering work completed at the office (official duty station) as well as work completed at the employee's residence (alternate duty station).

19. Employee will apply approved safeguards to protect Government/Agency records from unauthorized disclosure or damage and will comply with the Privacy Act requirements set forth in the Privacy Act of 1974, Public Law 93-579, codified at Section 552a, Title 5 U.S.C.

20. Employee and management have the right to terminate participation in the FWAP at any time. Management has the right to remove the employee from the program for such reasons as:  the employee's performance declines, the arrangement fails to benefit organizational needs, the employee performs unapproved overtime work, etc.

21. Employee agrees to limit the performance of his/her officially assigned duties to his/her official duty station or to agency-approved alternate duty stations.  Failure to comply with this provision may result in loss of pay, termination of the flexible workplace arrangement, and/or other appropriate disciplinary action.

22. Employee is responsible for ensuring the safety and adequacy of the home workplace and for ensuring applicable building and safety codes are met.  This includes but is not limited to:  assuring that the home's electrical system is adequate for the use of Government equipment, safeguarding Government equipment

**Flexible Workplace Arrangements Program Agreement - Page 3**

from children and pets, and providing smoke detectors if required by the applicable building code. (Employees are encouraged to provide smoke detectors even if not required by the building code.)

23. If any government-owned computer equipment, software and/or peripherals are to be used in the home site, and/or if any government records are to be electronically accessed from the home site, and approved Off-Site Computing Request will become part of this agreement.

24. All Government-provided equipment is for official business only. Employees are prohibited from using such equipment for private purposes.

25. The standards of conduct continue to apply to employees at their alternate duty station.

26. At specified intervals, the supervisor and the employee will conduct an evaluation which summarizes the flexible workplace impact on the office, the employee, the supervisor, and other organizational elements.

_____       2-12-99
Michael T. Benson, Employee          Date

_____       2-12-99
Marina Chang, Acting Team Leader      Date

_____       3/2/99
Linda M. Katz, M.D., Supervisor       Date

_____       3/4/99
Debra L. Bowen, M.D., Division Acting Director  Date

_____       3/4/1999
Robert DeLap, M.D., Ph.D., Office Director   Date
(Approving Official)

_____       3/8/99
CDER FWAP Coordinator          Date Reviewed

**Flexible Workplace Arrangements Program Agreement - Page 4**

### FWAP Participant Information Sheet

**Participant:**

| | |
|---|---|
| Name: | Michael T. Benson |
| Grade and Series: | GS-660-14 |
| HFD: | 560 |
| Office Address: | Rm. S230, 9201 Corporate Blvd., Rockville, MD<br>Tour of Duty:  8:00am to 4:30pm<br>     Monday, Wednesday, Thursday, and Friday |
| Office Phone: | (301) 827-2311 |
| Home Address: | 2703 Waco Court, Baltimore, MD  21209<br>Tour of Duty:  8:30am to 5:00 pm<br>     Tuesday |
| Home Phone: | 410-484-7262 |

**Participant's Supervisor:**

| | |
|---|---|
| Name: | Linda M. Katz, M.D. |
| Title: | Deputy Director<br>Division of OTC Drug Products |
| Grade and Series: | GS-0602-15 |
| Office Phone: | (301) 827-2272 |

**Division Director**
**(Acting):**        Debra L. Bowen, M.D.


**Office Director:**        Robert DeLap, M.D., Ph.D.

M E M O R A N D U M

DEPARTMENT OF HEALTH AND HUMAN SERVICES
PUBLIC HEALTH SERCIE
FOOD AND DRUG ADMINISTRATION
CENTER FOR DRUG EVALUATION AND RESEARCH

DATE:    May 27, 1999

FROM:    Linda M. Katz, M.D., M.P.H.
         Deputy Director, Division of Over-the-Counter Drug Products

TO:      Michael Benson

SUBJECT: Flexiplace

As we discussed earlier today, you may request to do flexiplace for two days per week for a conditional 4 month period, at which time your performance will be reassessed. You are again reminded that you are expected to follow the MaPP with regard to meeting attendance, recordation of time and work performance. I will continue to expect weekly updates of your progress and remind you that you must adhere to the time-lines established for completion of your projects. Failure to do so will result in termination of this agreement.

In addition, you are reminded that you cannot increase your flexiplace to two days until the proper documentation has been executed and until you are formally notified by me that it has been approved.

5-28-99